**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RICHEMONT INTERNATIONAL SA, | ) | |
| CARTIER INTERNATIONAL A.G., | ) | |
| MONTBLANC-SIMPLO GMBH, CHLOE | ) | Case No. 16-cv-01227 |
| S.A.S., VAN CLEEF & ARPELS SA, | ) | |
| OFFICINE PANERAI A.G., and LANCEL | ) | **Judge Manish S. Shah** |
| INTERNATIONAL SA, | ) | |
| | ) | **Magistrate Judge Sheila Finnegan** |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LUO LIANG, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR**
**SUMMARY JUDGMENT AND A STATUTORY DAMAGES AWARD AS TO THE**
**DEFENDANT IDENTIFIED BY AND OPERATING AT LEAST THE INTERNET**
**STORE ROYALWAYTRADE**

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

    A.   Plaintiff Van Cleef & Arpels' ALHAMBRA Trademarks ......................................... 3

    B.   Defendant's Unlawful Activities ............................................................................. 3

    C.   Procedural History ................................................................................................. 4

II.    ARGUMENT ...................................................................................................... 5

    A.   Summary Judgment Standard ................................................................................. 5

    B.   Plaintiff Is Entitled to Summary Judgment Against Defendant on Its Trademark
        Infringement and Counterfeiting, False Designation of Origin, and UDTPA Claims ..
        ....................................................................................................................... 5

        i.     The ALHAMBRA Trademarks Are Federally Registered .............................. 6

        ii.    Defendant Advertised and/or Offered to Sell Counterfeit Goods in Commerce
            without Van Cleef & Arpels' Authorization ...................................................... 7

        iii.   Defendant's Use of the Counterfeit ALHAMBRA Trademarks Causes a
            Likelihood of Confusion and Infringes as a Matter of Law ............................. 7

III.   PLAINTIFF IS ENTITLED TO STATUTORY DAMAGES ............................................ 9

    A.   Statutory Damages Are Appropriate in this Case ...................................................... 10

    B.   Defendant's Wide Exposure over the Internet Merits a Substantial Statutory
        Damages Award .................................................................................................. 12

    C.   The Value of the ALHAMBRA Trademarks Justifies a High Statutory Damages
        Award ................................................................................................................. 14

    D.   The Requested Statutory Damages Award Must Sufficiently Deter Defendant and
        Similar Online Counterfeit Sellers ......................................................................... 15

IV.   PLAINTIFF IS ENTITLED TO PERMANENT INJUNCTIVE RELIEF ........................ 16

V.    PLAINTIFF IS ENTITLED TO ATTORNEY'S FEES AND COSTS ............................. 16

VI.   CONCLUSION .................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ............................................................................................. 5

*AutoZone, Inc. v. Strick*,
543 F.3d 923 (7th Cir. 2008) ............................................................................. 8

*Bulgari, S.p.A. v. Zou Xiaohong, et al.*,
2015 U.S. Dist. LEXIS 140606 (N.D. Ill. Oct. 15, 2015) .......................... 1, 11, 13, 16, 17

*Burberry Ltd. v. Designers Imps., Inc.*,
No. 07-cv-3997, 2010 U.S. Dist. LEXIS 3605 (S.D.N.Y. Jan. 19, 2010) ....................... 14

*CAE, Inc. v. Clean Air Eng'g Inc.*,
267 F.3d 660 (7th Cir. 2001) ........................................................................... 7, 9

*Chi-Boy Music v. Charlie Club*,
930 F.2d 1224 (7th Cir. 1991) ......................................................................... 12

*Door Sys. v. Pro-Line Door Sys.*,
83 F.3d 169 (7th Cir. 1996) .............................................................................. 7

*Lorillard Tobacco Co. v. J.J. Shell Food Mart, Inc.*,
No. 03-cv-5506, 2005 U.S. Dist. LEXIS 26626 (N.D. Ill. Oct. 27, 2005) ...................... 13

*Lorillard Tobacco Co. v. S&M Cent. Serv. Corp.*,
No. 03-cv-4986, 2004 U.S. Dist. LEXIS 22563 (N.D. Ill. Nov. 5, 2004) ................... 9, 10

*Louis Vuitton Malletier, et al. v. Veit*,
211 F. Supp. 2d 567 (E.D. Pa. 2002) ............................................................... 14

*Louis Vuitton Malletier, S.A. v. Mosseri*,
No. 07-cv-2620, 2009 U.S. Dist. LEXIS 100851 (D.N.J. Oct. 28, 2009) ....................... 14

*Louis Vuitton S.A. v. Pun Yang Lee*,
875 F.2d 584 (7th Cir. 1989) ........................................................................... 11

*Luxottica Group S.p.A. v. Li Hui, et al.*,
No. 1:15-cv-06977 (N.D. Ill. Sept. 29, 2015) ................................................. 17

*Luxottica USA LLC v. The Partnerships, et al.*,
2015 U.S. Dist. LEXIS 78961 (N.D. Ill. June 18, 2015) .......................... 1, 14, 15, 16, 17

*Microsoft Corp. v. Rechanik*,
249 F. App'x 476 (7th Cir. 2007) ................................................................... 8, 11

*Monster Energy Company v. Meng Chun Jing, et al.*,
  2015 U.S. Dist. LEXIS 86956 (N.D. Ill. July 6, 2015) ...................... 10, 11, 13, 14, 15, 17

*Neopost Industrie B.V. v. PFE Int'l Inc.*,
  403 F. Supp. 2d 669 (N.D. Ill. 2005) ............................................................................. 5

*Packaging Supplies, Inc.  v. Harley-Davidson,  Inc.*,
  2011  WL 1811446 (N.D. Ill. May 12, 2011) ................................................................ 6

*Packman v. Chi. Tribune Co.*,
  267 F.3d 628 (7th Cir. 2001) ......................................................................................... 4

*Phillip Morris USA Inc. v. Marlboro Express*,
  No. 03-cv-1161, 2005 U.S. Dist. LEXIS 40359 (E.D.N.Y. Aug. 26, 2005) ................... 16

*Rolex Watch U.S.A., Inc. v. Jones*,
  No. 99-cv-2359, 2002 U.S. Dist. LEXIS 6657 (S.D.N.Y. Apr. 17, 2002) ....................... 14

*Sara Lee v. Bags of New York, Inc.*,
  36 F. Supp. 2d 161 (S.D.N.Y. 1999) ....................................................................... 12, 13

*Tiffany (NJ) LLC v. Dong*, No. 11-cv-2183,
  2013 U.S. Dist. LEXIS 114986 (S.D.N.Y. Aug. 9, 2013) ............................................... 13

*Tony Jones Apparel, Inc. v. Indigo USA, LLC*,
  2005 U.S. Dist. LEXIS 14649 (N.D. Ill. July 11, 2005) ................................................. 17

*Two Pesos, Inc. v. Taco Cabana,  Inc.*,
  505 U.S. 763 (1992) ........................................................................................................ 6

## Statutes

15 U.S.C. § 1057(b) ................................................................................................................ 6

15 U.S.C. § 1065 ................................................................................................................. 3, 6

15 U.S.C. § 1114(1) ................................................................................................................ 5

15 U.S.C. § 1115(a) ................................................................................................................ 6

15 U.S.C. § 1115(b) ............................................................................................................ 3, 6

15 U.S.C. § 1116(a) .......................................................................................................... 17, 18

15 U.S.C. § 1117(b) .......................................................................................................... 17, 18

15 U.S.C. § 1117(c) ................................................................................................. 9, 10, 12, 16

15 U.S.C. § 1117(c)(1) ........................................................................................................... 10

15 U.S.C. § 1117(c)(2).................................................................................... 10, 16

15 U.S.C. § 1125(a)(1)......................................................................................... 5

15 U.S.C. § 1127.................................................................................................. 7

17 U.S.C. § 504(c).............................................................................................. 12

Fed. R. Civ. P. 56(a)............................................................................................ 4

## MEMORANDUM

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff Van Cleef & Arpels SA ("Plaintiff" or "Van Cleef & Arpels") submits this Motion for Summary Judgment and a Statutory Damages Award as to the Defendant identified by and operating at least the Internet Store royalwaytrade[1] ("Defendant"), which is advertising and offering for sale products using counterfeit reproductions of Plaintiff Van Cleef & Arpels' federally registered, famous and well-known ALHAMBRA trademarks (the "Counterfeit Products") through their fully interactive, commercial Internet store royalwaytrade (the "Defendant Internet Store"). In recent similar cases in this District, Courts entered summary judgment in favor of the trademark owners, found willful infringement and trademark counterfeiting, and awarded substantial six-figure statutory damage awards. *Bulgari, S.p.A. v. Zou Xiaohong, et al.*, 2015 U.S. Dist. LEXIS 140606, at *7 (N.D. Ill. Oct. 15, 2015) (awarding $100,000 for three represented sales); *Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *7-10 (N.D. Ill. June 18, 2015) ($150,000 awarded for three infringed marks, and holding that even though there was no evidence submitted that defendant was a "large-scale counterfeiter," defendant's online sale of counterfeit goods made plaintiff's actual losses difficult to calculate and justified a substantial award).

## I. INTRODUCTION

Since its inception in 1906, Van Cleef & Arpels has been known for its innovative, highly artistic and high-quality luxury jewelry and timepieces (the "Van Cleef & Arpels Products"). Van Cleef & Arpels Products typically include at least one of the Van Cleef & Arpels' registered

---

[1] Defendant is also identified by and operating the Internet Stores dealsgoing, sfcdirect and uptogethertek, which were sued in *Luxottica Group, S.p.A. and Oakley, Inc. v. Hao Li, et al.*, No. 16-cv-487 (N.D. Ill. Feb. 25, 2016). Counsel for Plaintiff also represents Plaintiffs Luxottica Group S.p.A. and Oakley, Inc. in the *Luxottica* action.

1

trademarks, which include its Alhambra trademarks. Van Cleef & Arpels has sold tens of millions of dollars' worth of jewelry, including rings, pendants, earring, necklaces and bracelets, that incorporate the Alhambra marks and has spent millions of dollars advertising, marketing and otherwise promoting the Alhambra marks, which, according to a *New York Times* article, are considered an "iconic symbol of wealth and inclusion on a par with the [Hermes] Birkin bag." Declaration of Richard Graham (the "Graham Declaration") at ¶ 4. The Alhambra marks have appeared over the years in advertisements and features in nationally-circulated, well-known publications, including *Elle*, *Town & County, People, Travel + Leisure*, *Vogue, Harper's Bazaar, Forbes,* and *W*, among others. *Id*. at ¶ 5. *Women's Wear Daily* quoted the former president of Bergdorf Goodman as saying "[t]he distinctive Alhambra [trademark] is iconic in the world of jewelry," and "Van Cleef & Arpels has built a signature collection based on the Alhambra design, which has become emblematic of Van Cleef & Arpels." *Id*. at ¶ 6. Additionally, *Luxist*, a website that covers luxury goods and services, stated that "[t]he iconic quatrefoil is the time-honored symbol of health, wealth, true love and luck, at once an embodiment of simplistic elegance. The Alhambra [mark] has become a most-desired addition to the jewel boxes of legends of the screen and stage, members of the royal set, exquisite tastemakers and jewelry lovers throughout the world." *Id*. at ¶ 7.

Celebrities including, but not limited to, Jane Fonda, Hilary Swank, Carrie Underwood and Debra Messing have been photographed wearing jewelry incorporating the Alhambra marks. *Id*. at ¶ 8. Historically, the Alhambra line of jewelry is most identified with Grace Kelly (later known as H.S.H. Princess Grace of Monaco), who owned several necklaces. *Id*. at ¶ 9. In 2011, the Smithsonian's Cooper-Hewitt Design Museum hosted an exhibit for Van Cleef & Arpels' jewelry, featuring one of Princess Grace of Monaco's Alhambra necklaces. *Id*. Contemporarily, Reese

Witherspoon is most associated with the Alhambra trademarks, as an article from *People* magazine noted Ms. Witherspoon's collection of jewelry incorporating the Alhambra trademarks. *Id*. at ¶ 10. Consumers have also seen the Alhambra trademarks featured in major motion pictures and television shows, including Sex and the City 2 (2010), Gossip Girl (Season 2, 2008-09), When in Rome (2010), L.A. Confidential (2007), and Boss (2011). *Id*. at ¶ 11.

Plaintiff moves for summary judgment against Defendant for federal trademark infringement and counterfeiting (Count I), false designation of origin (Count II), and violation of the Illinois Uniform Deceptive Trade Practices Act ("UDTPA") (Count IV). There is no genuine issue of material fact as to whether Defendant is engaged in advertising and offering for sale Counterfeit Products on the Defendant Internet Store. Further, Plaintiff requests that this Court include a finding that the Defendant's conduct was willful and award statutory damages in the amount of at least ninety thousand dollars ($90,000).

### A. Plaintiff Van Cleef & Arpels' ALHAMBRA Trademarks

Plaintiff Van Cleef & Arpels holds numerous U.S. federal trademark registrations for its trademarks, including U.S. Registration Nos. 4,037,174 and 4,653,258 (hereinafter, the "ALHAMBRA Trademarks"). Plaintiff's Rule 56.1 Statement of Undisputed Facts at ¶ 1 ("Rule 56.1 Statement"). The U.S. registrations for the ALHAMBRA Trademarks are valid, subsisting, and in full force and effect. *Id.*

### B. Defendant's Unlawful Activities

Defendant is reaching out to do business with Illinois residents by operating the Defendant Internet Store through which Illinois residents can purchase Counterfeit Products. Rule 56.1 Statement at ¶ 4. Defendant was selling and/or offering for sale products bearing counterfeit versions of Van Cleef & Arpels' ALHAMBRA Trademarks (defined above as the "Counterfeit Products") through the Online Marketplace Account identified as royalwaytrade at the URL

ebay.com/usr/royalwaytrade (defined above as the "Defendant Internet Store"). *Id.* at ¶ 2. Specifically, Defendant offered for sale earrings bearing counterfeits of the ALHAMBRA Trademarks for $6.05 CAD (approximately $4.47 USD). *Id.* By way of reference, genuine earrings bearing the ALHAMBRA Trademarks retail for over $4,000 USD. Graham Declaration at ¶ 12. Defendant identified the product as "2x 1 Black Four Leaf Clover White Pearl Stud Earrings Ear Studs." Rule 56.1 Statement at ¶ 2. Plaintiff examined the images of the Counterfeit Products shown on the Defendant Internet Store and determined the products were counterfeit. *Id.* In addition, Plaintiff's investigator purchased Counterfeit Products offered for sale on the Defendant Internet Store. *Id.* Plaintiff has not authorized or licensed the Defendant to use the ALHAMBRA Trademarks on the Defendant Internet Store. *Id.* at ¶ 3. Defendant is not an authorized retailer of genuine Van Cleef & Arpels Products, and the Counterfeit Products offered for sale on the Defendant Internet Store are not genuine Van Cleef & Arpels Products. Id.

### C. Procedural History

Plaintiffs filed this action on January 27, 2016, alleging claims relating to federal trademark infringement and counterfeiting, and seeking statutory damages and injunctive relief against Defendant. [1, 10]. This Court granted an injunction against Defendant on February 2, 2016, finding that Plaintiffs demonstrated, among other things, a strong likelihood of success on the merits of their trademark infringement and counterfeiting claims.[2] [27]. Defendant filed an Answer [39] to Plaintiffs' Amended Complaint on March 6, 2016. The Court entered Default and Default Judgment [47] (awarding statutory damages of two hundred thousand dollars ($200,000) per defendant) against defaulting defendants on March 17, 2016, with the exception of Defendant.

---

[2] The Temporary Restraining Order [27] was subsequently converted to a Preliminary Injunction [31] on February 16, 2016.

## II.     ARGUMENT

### A.     Summary Judgment Standard

A district "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   The district court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 637 (7th Cir. 2001).   A genuine dispute as to any material fact only exists if a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B.     Plaintiff Is Entitled to Summary Judgment Against Defendant on Its Trademark Infringement and Counterfeiting, False Designation of Origin, and UDTPA Claims

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce, any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use is likely to cause confusion, or to cause mistake or to deceive."  15 U.S.C. § 1114(1).   Section 43(a) of the Lanham Act further imposes liability upon a defendant who "on or in connection with any goods or services ... uses in commerce any ... false designation of origin, false or misleading description of fact, or false or misleading misrepresentation of fact, which is likely to cause confusion or to cause mistake, or to deceive as to the ... origin, sponsorship, or approval of his or her goods ... by another person."  15 U.S.C. § 1125(a)(1). Under the UDTPA, a defendant is liable for, among other things, (1) passing off goods as those of another; (2) causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods; or (3) causing likelihood of confusion or

of misunderstanding as to affiliation, connection, or association with another. 815 Ill. Comp. Stat. 510/2(a).

For a *prima facie* case of infringement, Van Cleef & Arpels must show that (1) the ALHAMBRA Trademarks are distinctive enough to be worthy of protection; (2) Defendant is not authorized to use the ALHAMBRA Trademarks; and (3) Defendant's use of the ALHAMBRA Trademarks causes a likelihood of confusion as to the origin or sponsorship of Defendant's products. *See Neopost Industrie B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citation omitted). Van Cleef & Arpels satisfies all three requirements of the Lanham Act to successfully bring a trademark infringement and counterfeiting claim. Van Cleef & Arpels' Section 43(a) of the Lanham Act and UDTPA claims involve the same elements. *See Packaging Supplies, Inc. v. Harley-Davidson, Inc.*, 2011 WL 1811446, at *5 (N.D. Ill. May 12, 2011). Moreover, "the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks .... [w]hether we call the violation infringement, unfair competition or false designation of origin, the test is identical – is there a likelihood of confusion?" *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992) (internal citations omitted).

### i.     The ALHAMBRA Trademarks Are Federally Registered

Regarding the first element, Van Cleef & Arpels' ALHAMBRA Trademarks are registered with the United States Patent and Trademark Office on the Principal Register. Rule 56.1 Statement at ¶ 1. The issuance of federal registrations on the Principal Register constitutes *prima facie* evidence of the validity of Van Cleef & Arpels' registered trademarks and of the registration of the marks, of Van Cleef & Arpels' ownership of the trademarks, and of Van Cleef & Arpels' exclusive right to use the marks in commerce. 15 U.S.C. §§ 1115(a), 1057(b).

Therefore, there can be no genuine issue of material fact as to whether Van Cleef & Arpels has valid and exclusive rights in the ALHAMBRA Trademarks.

ii.     Defendant Advertised and/or Offered to Sell Counterfeit Goods in
Commerce without Van Cleef & Arpels' Authorization

Defendant advertised and offered for sale products using the ALHAMBRA Trademarks

via the Defendant Internet Store.  Defendant is not an authorized retailer of genuine Van Cleef &

Arpels Products, and the Counterfeit Products offered for sale on the Defendant Internet Store are

not genuine Van Cleef & Arpels Products.  Rule 56.1 Statement at ¶ 3.

iii.     Defendant's Use of the Counterfeit ALHAMBRA Trademarks
Causes a Likelihood of Confusion and Infringes as a Matter of Law

The side-by-side comparison below shows that Defendant's unauthorized marks are

spurious marks which are identical with, or substantially indistinguishable from, the registered

ALHAMBRA Trademarks, and thus are counterfeit.    15 U.S.C. § 1127 (definition of

"counterfeit").

| Registered ALHAMBRA Trademarks | Defendant's Counterfeit Products |
|---|---|
|  |  |

In a trademark infringement case, likelihood of consumer confusion is ordinarily a question

of fact.  *CAE, Inc. v. Clean Air Eng'g Inc.,* 267 F.3d 660, 677 (7th Cir. 2001) (citations omitted).

However, "if the evidence is so one-sided that there can be no doubt about how the question should

be answered," the question of whether likelihood of confusion exists may be resolved on summary

judgment.  *Id.* (citing *Door Sys. v. Pro-Line Door Sys.*, 83 F.3d 169, 173 (7th Cir. 1996)).

7

The Seventh Circuit has held that where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007).  Accordingly, the Court can presume a likelihood of confusion from Defendant's use of the ALHAMBRA Trademarks.

The result is the same when considered in light of the Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, which include:  (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any actual confusion; and, (7) the intent of the defendant to "palm off" his products as that of another.  *AutoZone, Inc. v.  Strick*,  543 F.3d 923, 929 (7th Cir. 2008).  No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important."  *Id.*

Van Cleef & Arpels has submitted documentation showing that the Defendant is selling Counterfeit Products that are substantially indistinguishable in appearance from genuine Van Cleef & Arpels Products and use counterfeit marks identical to the federally registered ALHAMBRA Trademarks.  Both Van Cleef & Arpels and the Defendant advertise and sell their products over the Internet, targeting consumers searching for genuine Van Cleef & Arpels Products.  [15] at ¶ 17; Rule 56.1 Statement at ¶ 2.  Those consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing genuine Van Cleef & Arpels Products from Counterfeit Products.  In that regard, Defendant advertises and offers to sell Counterfeit Products that look similar to genuine Van Cleef & Arpels Products and use the ALHAMBRA Trademarks.  Rule 56.1 Statement at ¶ 2.  In addition, Defendant causes post-sale

confusion because a potential customer seeing the Counterfeit Products may mistakenly attribute the product to Van Cleef & Arpels, thereby influencing his buying decision, either positively or negatively. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 683 (7th Cir. 2001). Van Cleef & Arpels does not need to prove actual consumer confusion; rather it only needs to show a likelihood of confusion exists, particularly given the compelling evidence that Defendant is attempting to "palm off" its goods as genuine Van Cleef & Arpels Products. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001).

## III.  PLAINTIFF IS ENTITLED TO STATUTORY DAMAGES

There is no genuine issue of material fact as to whether Defendant has infringed the ALHAMBRA Trademarks through their willful and intentional trademark counterfeiting. Further, there is no genuine issue of material fact as to whether Defendant's infringement was willful, because Defendant knew it was infringing the ALHAMBRA Trademarks or, at a minimum, had a reckless disregard for Van Cleef & Arpels' rights. As such, Van Cleef & Arpels elects to recover an award of statutory damages as authorized by 15 U.S.C. § 1117(c) for trademark counterfeiting for Defendant's sale of Counterfeit Products.

The awarding of statutory damages serves dual interests in that it is remedial in nature, but also intended to protect an important public interest. *Sands, Taylor & Wood,* 34 F.3d at 1347-48. Given the broader economic losses and harm to the job market caused by counterfeiting, coupled with the possible dangers to consumers who are tricked into purchasing low quality, counterfeit products over the Internet, it is important to both penalize defendants and try to deter future violations. *Lorillard Tobacco Co. v. S&M Cent. Serv. Corp.*, No. 03-cv-4986, 2004 U.S. Dist. LEXIS 22563, *18 (N.D. Ill. Nov. 5, 2004). Accordingly, Van Cleef & Arpels respectfully requests the Court's entry of an award in the amount of at least ninety thousand dollars ($90,000) against the Defendant for willful counterfeiting of the ALHAMBRA Trademarks.

9

## A. Statutory Damages Are Appropriate in this Case

Pursuant to the statutory damages provision of the Lanham Act, 15 U.S.C. § 1117(c), a plaintiff in a case involving the use of a counterfeit mark may elect to receive "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). When the counterfeiting is found to be willful, 15 U.S.C. § 1117(c)(2) provides for statutory damages of up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2). "Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563 at *19-20; *Monster Energy Company v. Meng Chun Jing, et al.*, 2015 U.S. Dist. LEXIS 86956, at *10 (N.D. Ill. July 6, 2015). As such, knowledge need not be proven directly, but can be inferred from a defendant's conduct. *Id*. at 20.

Plaintiff Van Cleef & Arpels has sold tens of millions of dollars' worth of jewelry, including rings, pendants, earring, necklaces and bracelets, that incorporate the ALHAMBRA Trademarks and has spent millions of dollars advertising, marketing and otherwise promoting the ALHAMBRA Trademarks, which, according to a *New York Times* article, are considered an "iconic symbol of wealth and inclusion on a par with the [Hermes] Birkin bag." Graham Declaration at ¶ 4. *Women's Wear Daily* quoted the former president of Bergdorf Goodman as saying "[t]he distinctive Alhambra [trademark] is iconic in the world of jewelry," and "Van Cleef & Arpels has built a signature collection based on the Alhambra design, which has become emblematic of Van Cleef & Arpels." *Id*. at ¶ 6. Additionally, numerous celebrities have been photographed wearing jewelry incorporating the ALHAMBRA Trademarks, and jewelry incorporating the ALHAMBRA Trademarks has been featured in numerous television shows and

motion pictures. *Id.* at ¶¶ 8, 10, 11. As a result, products featuring the ALHAMBRA Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Plaintiffs. Thus, Defendant's use of the ALHAMBRA Trademarks had to be willful, because products sold under the ALHAMBRA Trademarks are widely recognized and associated exclusively with Van Cleef & Arpels. *See Monster Energy Company v. Meng Chun Jing, et al.*, 2015 U.S. Dist. LEXIS 86956, at *10 (N.D. Ill. July 6, 2015); *Bulgari, S.p.A. v. Zou Xiaohong, et al.*, 2015 U.S. Dist. LEXIS 140606, at *6. In addition, Defendant offered its Counterfeit Products at prices well below the market prices for genuine products bearing the ALHAMBRA Trademarks, which also indicates willful counterfeiting. Rule 56.1 Statement at ¶ 2; Graham Declaration at ¶ 12. *See Louis Vuitton S.A. v. Pun Yang Lee*, 875 F.2d 584, 589 (7th Cir. 1989) ("manufacturers of high-fashion leather goods do not distribute them to retail outlets through itinerant peddlers, do not line the goods with purple vinyl, and do not sell them at prices which permit the retailer to make money reselling them for $ 37.80.").

Although 15 U.S.C. § 1117(c) contains the dollar range for possible statutory damage awards, the only guidance provided by the statute for how to determine a damage award within the statutory dollar range is "as the court considers just." 15 U.S.C. § 1117(c). Courts interpreting 15 U.S.C. § 1117(c) have analogized case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c). *See Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563, *10; *Sara Lee v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999).

The Seventh Circuit's standard for awarding statutory damages for copyright infringement under 17 U.S.C § 504(c) is articulated in *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991). Under the *Chi-Boy* standard, a court awarding statutory damages is "not required to follow any rigid formula," but instead "enjoys wide discretion." *Id*. In computing the award

amount, a court may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent." *Id*. Courts in this district have also considered the significant value of a plaintiff's brand and the efforts taken to protect, promote and enhance that brand in determining the appropriate dollar figure for the award. *Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563 at *16.

Further, because damages inquiries under Section 1117(c) consider both punitive and compensatory considerations, "there is no necessary mathematical relationship between the size of such an award and the extent or profitability of the defendant's wrongful activities." *Sara Lee*, 36 F. Supp. 2d at 165. Thus, courts have looked beyond restitution of profit and restoration of injury to award damages, holding that deterrence of future infringement by the defendant and others situated like him is an important factor. *Lorillard Tobacco Co. v. J.J. Shell Food Mart, Inc.*, No. 03-cv-5506, 2005 U.S. Dist. LEXIS 26626, *16 (N.D. Ill. Oct. 27, 2005). Courts have also held that damages awards limited to lost profits would have little to no deterrent effect on future violations – "a counterfeiter must fear more than just having to turn over his ill-gotten gains to the rightful owners." *See Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563 at *17.

## B. Defendant's Wide Exposure over the Internet Merits a Substantial Statutory Damages Award

Defendant's ability to reach a vast customer base by willfully advertising and offering for sale Counterfeit Products over the Internet on the eBay marketplace platform merits a substantial statutory damages award. Defendant has the ability to "reach a virtually limitless number of potential customers worldwide." *Tiffany (NJ) LLC v. Dong*, No. 11-cv-2183, 2013 U.S. Dist. LEXIS 114986, *17 (S.D.N.Y. Aug. 9, 2013) (awarding a total of $9 million in statutory damages, noting defendant's vast customer base). Defendant is able to reach a large base of active buyers with the eBay platform. As of December 31, 2015, the eBay marketplace had more than 162

12

million active buyers. Declaration of Allyson Martin at ¶ 2. Courts in this District have also recognized the ability for online marketplace sellers to reach a vast customer base and this effect on statutory damages. *See Monster Energy Company v. Meng Chun Jing, et al.*, 2015 U.S. Dist. LEXIS 86956, at *11 (holding that AliExpress "is a busy website that provides the potential to reach a vast customer base."); *Bulgari, S.p.A. v. Zou Xiaohong, et al.*, 2015 U.S. Dist. LEXIS 140606, at *7 ("[i]t is difficult for Bulgari to prove actual damages because the internet platform Li used, AliExpress.com, is a popular website reaching a vast customer base."). As such, a substantial statutory damages award is justified, and in similar cases involving willful Internet-based counterfeiting, courts often award high damages awards due to wide market exposure. *See Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *7-10 (N.D. Ill. June 18, 2015) ($150,000 awarded for three infringed marks based on defendant's online sale of counterfeit goods); *Monster Energy Company v. Meng Chun Jing, et al.*, 2015 U.S. Dist. LEXIS 86956, at *13 (awarding statutory damages of $1 million); *Rolex Watch U.S.A., Inc. v. Jones*, No. 99-cv-2359, 2002 U.S. Dist. LEXIS 6657, at *16 (S.D.N.Y. Apr. 17, 2002) (holding that an award of $25,000 for each category of trademarked goods would be inadequate in view of the virtually limitless number of available customers on the Internet, distinguishing cases where defendants had "storefront operations," and noting that one of defendant's websites had more than 90,000 visitors); *Louis Vuitton Malletier, S.A. v. Mosseri*, No. 07-cv-2620, 2009 U.S. Dist. LEXIS 100851, *9 (D.N.J. Oct. 28, 2009) (awarding over $4 million in total statutory damages, finding that defendant's operation of its counterfeit goods enterprise on the Internet exponentially increased the damages); *Louis Vuitton Malletier, et al. v. Veit*, 211 F. Supp. 2d 567, 584-85 (E.D. Pa. 2002) (awarding $1,500,000 total and stating "the point of sale is very relevant to the statutory damages discussion" because "143 million Americans use the internet and represent the

counterfeiter's potential customer base"); *Burberry Ltd. v. Designers Imps., Inc.*, No. 07-cv-3997, 2010 U.S. Dist. LEXIS 3605, *28 (S.D.N.Y. Jan. 19, 2010) (Court awarded $1,500,000 in statutory damages representing $100,000 per mark per type of goods, finding that a large award was necessary because of "defendant's ability to reach a vast customer base through internet advertising").

Thus, Van Cleef & Arpels' request for a high statutory damages award should be given favorable consideration in view of the Defendant's wide market exposure and ability to reach a vast customer base over the Internet.

C. **The Value of the ALHAMBRA Trademarks Justifies a High Statutory Damages Award**

In determining an appropriate damage award, this Court should be guided by the *Lorillard* case and consider the "significant value of [the ALHAMBRA] brand and the efforts taken to protect, promote and enhance that brand." *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563 at *16. As noted previously in this Memorandum, Plaintiff Van Cleef & Arpels has sold tens of millions of dollars' worth of jewelry, including rings, pendants, earring, necklaces and bracelets, that incorporate the ALHAMBRA Trademarks and has spent millions of dollars advertising, marketing and otherwise promoting the ALHAMBRA Trademarks. Graham Declaration at ¶ 4. Jewelry incorporating the ALHAMBRA Trademarks has been extensively recognized by unsolicited publicity as "iconic," "distinctive," "[a] symbol of wealth and inclusion," and "emblematic" of Plaintiff Van Cleef & Arpels. *Id.* at ¶¶ 4, 6, 7. As such, the ALHAMBRA Trademarks are famous marks and valuable assets of Van Cleef & Arpels.

Van Cleef & Arpels, in conjunction with its co-plaintiffs in this action, has a worldwide anti-counterfeiting program, and regularly investigate suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers. [15] at ¶ 55. Van Cleef

14

& Arpels, in conjunction with its co-plaintiffs, has also taken action against the owners/operators of thousands of websites and online marketplace listings.[3] Thus, Van Cleef & Arpels' request for a high statutory damages award should be given favorable consideration in view of the value of the ALHAMBRA Trademarks and the extensive steps being taken to protect, promote and enhance them. *See Monster Energy Company v. Meng Chun Jing, et al.*, 2015 U.S. Dist. LEXIS 86956, at *11; *Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *7-8 (N.D. Ill. June 18, 2015) (N.D. Ill. June 18, 2015); *Bulgari, S.P.A. v. Zou Xiaohong, et al.*, 2015 U.S. Dist. LEXIS 140606, at *7.

### D. The Requested Statutory Damages Award Must Sufficiently Deter Defendant and Similar Online Counterfeit Sellers

Additionally, the remedy imposed under the statute must provide a sufficient deterrent effect to ensure that the guilty party will not engage in further infringing conduct. *Sands, Taylor & Wood,* 34 F.3d at 1348. For example, in *Phillip Morris USA Inc. v. Marlboro Express*, the Court stated that due to, "the size of the potential profit given the quantities of [counterfeit goods] involved, and the need for a substantial deterrent to future misconduct by defendants and other counterfeit traffickers ... plaintiff is entitled to the maximum statutory award under 15 U.S.C. § 1117(c)(2)." No. 03-cv-1161, 2005 U.S. Dist. LEXIS 40359, *28 (E.D.N.Y. Aug. 26, 2005). *See also Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *8; *Bulgari, S.P.A. v. Zou Xiaohong, et al.*, 2015 U.S. Dist. LEXIS 140606, at *7.

Given the Court's clear discretion in determining the appropriate amount of the statutory damages award within the statutory limits of 15 U.S.C. § 1117(c), Van Cleef & Arpels respectfully requests the Court's entry of an award in the amount of at least ninety thousand dollars ($90,000)

---

[3] *Richemont International SA, et al. v. Chen Mei, et al.*, No. 15-cv-5991 (N.D. Ill. Sept. 9, 2015); *Richemont International SA, et al. v. Jing Mi Ling, et al.*, No. 15-cv-7482 (N.D. Ill. Oct. 13, 2015); *Richemont International SA, et al. v. Fengyu Li, et al.*, No. 15-cv-10410 (N.D. Ill. Jan. 12, 2016).

against the Defendant. Van Cleef & Arpels' request for damages is reasonable in light of prior awards against Internet-based counterfeiters. *Bulgari, S.p.A. v. Zou Xiaohong, et al.*, 2015 U.S. Dist. LEXIS 140606, at *7 (N.D. Ill. Oct. 15, 2015) ($100,000 awarded for three represented sales); *Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *7-10 (N.D. Ill. June 18, 2015) ($150,000 awarded for three infringed marks).

## IV.   PLAINTIFF IS ENTITLED TO PERMANENT INJUNCTIVE RELIEF

In addition to the foregoing relief, Van Cleef & Arpels respectfully requests entry of a permanent injunction enjoining Defendant from advertising, offering for sale, and selling Counterfeit Products or otherwise violating its rights in the ALHAMBRA Trademarks. 15 U.S.C. § 1116(a); *See also Luxottica Group S.p.A. v. Li Hui, et al.*, No. 1:15-cv-06977 (N.D. Ill. Sept. 29, 2015) (permanently enjoining and restraining defendants from selling counterfeit products).

## V.   PLAINTIFF IS ENTITLED TO ATTORNEY'S FEES AND COSTS

Pursuant to 15 U.S.C. § 1117(b), in a case involving use of a counterfeit mark, the court shall, unless it finds extenuating circumstances, award a reasonable attorney's fee if the violation consists of intentionally using a mark, knowing such mark is a counterfeit mark, in connection with the sale, offering for sale, or distribution of goods. 15 U.S.C. § 1117(b). *Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *14; *Monster Energy Company v. Meng Chun Jing, et al.*, 2015 U.S. Dist. LEXIS 86956, at *13; *Bulgari, S.P.A. v. Zou Xiaohong, et al.*, 2015 U.S. Dist. LEXIS 140606, at *9-10. Thus, if a defendant is liable because it was willfully blind, or because it knew the products it was selling were counterfeit, an award of attorney's fees is mandatory under § 1117(b), absent extenuating circumstances. *Tony Jones Apparel, Inc. v. Indigo USA, LLC,* 2005 U.S. Dist. LEXIS 14649, *31-33 (N.D. Ill. July 11, 2005). Van Cleef & Arpels respectfully requests entry of an award of its reasonable attorney's fees and costs pursuant

to 15 U.S.C. § 1117(a) and (b) because Defendant knowingly and willfully advertised and offered for sale Counterfeit Products.

## VI.     CONCLUSION

Based on the above, Van Cleef & Arpels respectfully requests that this Court enter an order granting summary judgment against Defendant for willful federal trademark infringement and counterfeiting (Count I), false designation of origin (Count II), and violation of the Illinois Uniform Deceptive Trade Practices Act (Count IV). Finally, Van Cleef & Arpels requests that this Court award Van Cleef & Arpels statutory damages against Defendant of at least ninety thousand dollars ($90,000), enter a permanent injunction prohibiting Defendant from advertising, offering for sale, and selling Counterfeit Products and awarding Van Cleef & Arpels its reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1117(a) and (b).

Dated this 24th day of March 2016.          Respectfully submitted,


/s/ Justin R. Gaudio
Kevin W. Guynn
Amy C. Ziegler
Justin R. Gaudio
Jessica L. Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
kguynn@gbclaw.net
aziegler@gbclaw.net
jgaudio@gbclaw.net
jbloodgood@gbclaw.net

*Counsel for Plaintiff Van Cleef & Arpels SA*

18

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 24th day of March 2016, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system. The CM/ECF system will send a "Notice of E-Filing" to the attorneys of record in this case.

/s/ Justin R. Gaudio_____
Kevin W. Guynn
Amy C. Ziegler
Justin R. Gaudio
Jessica L. Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
kguynn@gbclaw.net
aziegler@gbclaw.net
jgaudio@gbclaw.net
jbloodgood@gbclaw.net

*Counsel for Plaintiff Van Cleef & Arpels SA*