| | |
|---|---|
| LUXOTTICA GROUP S.P.A. and OAKLEY, INC., <br><br> Plaintiffs, <br><br> v. <br><br> HAO LI, et al., <br><br> Defendants. <br><br> and <br><br> RICHEMONT INTERNATIONAL SA, CARTIER INTERNATIONAL A.G., MONTBLANC-SIMPLO GMBH, CHLOE S.A.S., VAN CLEEF & ARPELS SA, OFFICINE PANERAI A.G., and LANCEL INTERNATIONAL SA, <br><br> Plaintiffs, <br><br> v. <br><br> LUO LIANG, et al., <br><br> Defendants. | No. 16 CV 487 and <br> No. 16 CV 1227 <br><br> Judge Manish S. Shah |

## MEMORANDUM OPINION AND ORDER

Defendant operates the internet stores dealsgoing, sfcdirect, and uptogethertek, through which it sold sunglasses using counterfeit trademarks owned by plaintiffs Luxottica Group S.p.A. and Oakley, Inc. It also operates the internet store royalwaytrade, through which it sold earrings bearing counterfeit

trademarks owned by plaintiff Van Cleef & Arpels SA. Plaintiffs Luxottica and Oakley filed suit against defendant under docket number 16-cv-487. Plaintiff Van Cleef & Arpels filed suit against defendant under docket number 16-cv-1227. Both cases involve claims under the Lanham Act and the Illinois Uniform Deceptive Trade Practices Act, and both are litigated by the same counsel. And in both, plaintiffs now move for summary judgment and seek an award of reasonable attorney's fees and costs, at least $90,000 in statutory damages each, and a permanent injunction prohibiting defendant from selling counterfeit products bearing the infringed-upon trademarks. The arguments presented in each motion overlap significantly, so the two motions will be addressed together. For the following reasons, both motions for summary judgment are granted in favor of plaintiffs, permanent injunctions shall be entered, and in each case, statutory damages shall be awarded in the amount of $60,000, along with reasonable attorney's fees and costs.

I. **Legal Standards**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986). A court must "construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Apex Digital, Inc. v. Sears, Roebuck, & Co.*, 735 F.3d 962, 965 (7th Cir. 2013).

## II. Background

Plaintiffs Luxottica Group S.p.A. and Oakley, Inc. own a valid and incontestable trademark in the word "Wayfarer," registered with the United States Patent and Trademark Office under the number 595,513.[1] 1:16-cv-487, [85] ¶ 1.[2] Defendant operates multiple internet stores set in eBay's online marketplace. 1:16-cv-487, [85] ¶ 6. Defendant advertised and sold sunglasses that it described in its product listings as "Vintage 1980's Wayfarer Fashion Sunglasses Dark Lens Black

---

[1] Oakley is a wholly-owned subsidiary of Luxottica, and any distinction between the two companies is immaterial to the present motion.

[2] Bracketed numbers refer to entries on the district court docket. Citations to the *Luxottica Group S.p.A v. Li* docket are designated 1:16-cv-487, [docket number]. Citations to the *Richemont International SA v. Liang* docket are designated 1:16-cv-1227, [docket number]. The relevant facts are taken from defendant's responses to plaintiffs' LR 56.1 statements (1:16-cv-487, [85]; 1:16-cv-1227, [59]) and plaintiffs' responses to defendant's LR 56.1 statements of additional facts (1:16-cv-487, [87]; 1:16-cv-1227, [62]). In both cases, defendant objects only to the respective plaintiff's use of the term, "counterfeit," seemingly because of an implication that defendant's infringement was willful, but does not cite to any admissible evidence supporting its objection or claim that the marks were not identical. Because defendant does not properly controvert any of plaintiffs' factual statements, those facts are considered undisputed. Plaintiffs in turn object to defendant's entire statement of additional facts in each case, primarily because plaintiffs believe the affidavit upon which each fact relies is not based on the affiant's personal knowledge. The documents, in each case titled "Affidavit of John Z. Sun," have not been notarized, but they each state that their contents are true under penalty of perjury pursuant to 28 U.S.C. § 1746. *See* 1:16-cv-487, [84-1] at 2; 1:16-cv-1227, [58-1] at 2. Plaintiffs note that the documents also include the statement, "To the best of my knowledge, all facts in the response to the Plaintiff's Motion for Summary Judgment attached are true and correct." 1:16-cv-487, [84-1] ¶ 15; 1:16-cv-1227, [58-1] ¶ 15. Plaintiffs argue that this qualified statement implies that Mr. Sun does not have personal knowledge of the facts stated. That argument is unpersuasive. Mr. Sun is the director of STRADE Fareast Limited, the company that operates the internet stores (*see* 1:16-cv-487, [84-1] ¶ 1; 1:16-cv-1227, [58-1] ¶ 1), and it makes sense that the company policy and conduct to which he attests would be within his personal knowledge.

Frame Unisex," "Fashion Sunglasses Wayfarer Style Black Frame w/ Dark Lens Retro Square Glasses," and "Vintage 1980's Wayfarer Fashion Sunglasses Dark Lens Black Frame Mens Womens," using the eBay seller IDs dealsgoing, sfcdirect, and uptogethertek, respectively. 1:16-cv-487, [85] ¶¶ 2–4. Defendant listed the sunglasses for a few dollars each, and offered to sell and ship the sunglasses to potential customers throughout the United States, including Illinois. 1:16-cv-487, [85] ¶¶ 2–4. Luxottica had not authorized or licensed defendant to use its Wayfarer trademark. 1:16-cv-487, [85] ¶ 5.

Plaintiff Van Cleef & Arpels SA holds valid trademarks in a four-leaf-clover design, known as the Alhambra trademarks and registered with the United States Patent and Trademark Office under the numbers 4,037,174 and 4,653,258. 1:16-cv-1227, [59] ¶ 1. Defendant operates the eBay online marketplace account royalwaytrade. 1:16-cv-1227, [59] ¶ 3. Through that store, defendant offered for sale and sold earrings that it described as "2x 1 Black Four Leaf Clover White Pearl Stud Earrings Ear Studs," but which bore counterfeit versions of the Alhambra trademarks. Plaintiff had not authorized or licensed defendant to use its trademarks. 1:16-cv-1227, [59] ¶ 3. Defendant listed the earrings for $6.05 CAD (but said it also accepted payment in U.S. dollars), and offered to sell and ship the earrings to potential customers throughout the United States, including Illinois. 1:16-cv-1227, [59] ¶¶ 2, 4.

Defendant sold the sunglasses and earrings despite having some procedures in place designed to avoid listing or selling infringing products. 1:16-cv-487, [87] ¶ 8;

1:16-cv-1227, [62] ¶ 6. For example, defendant sells only unbranded merchandise, and employees are instructed to cross-reference product listings against an internal trademark database, as well as trademark databases maintained by the United States Patent and Trademark Office and others. 1:16-cv-487, [87] ¶ 8; 1:16-cv-487, [84-1] ¶¶ 3–4; 1:16-cv-1227, [62] ¶ 6; 1:16-cv-1227, [58-1] ¶¶ 3–4. If an item is found to be potentially infringing, or if complaints of infringement are received, the item is delisted. 1:16-cv-487, [84-1] ¶ 5; 1:16-cv-1227, [58-1] ¶ 5. Upon receiving notice of these lawsuits, defendant immediately removed the product listings at issue. 1:16-cv-487, [87] ¶ 10; 1:16-cv-1227, [62] ¶ 8.

### III. Analysis

#### A. Summary Judgment

In both cases, plaintiffs seek summary judgment on their federal claims of trademark infringement and counterfeiting under 15 U.S.C. § 1114 and false designation of origin under 15 U.S.C. § 1125(a), and their Illinois claim, based on the same conduct, under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1 *et seq*. To succeed on those claims, plaintiffs must show that the trademarks are protectable and that defendant's unauthorized use creates a likelihood of confusion among consumers as to the source, affiliation, connection, or sponsorship of defendant's products. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 673–74 (7th Cir. 2001); *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 957 (7th Cir. 1992) ("The 'keystone' of trademark infringement is 'likelihood of confusion' as to source, affiliation, connection or sponsorship of goods or services

5

among the relevant class of customers and potential customers."). That standard applies to both the federal trademark claims and the state-law claims. *See Schutt Mfg. Co. v. Riddell, Inc.*, 673 F.2d 202, 207 (7th Cir. 1982); *Tarin v. Pellonari*, 253 Ill.App.3d 542, 551 (1st Dist. 1993).

### 1. *The Wayfarer Trademark*

Defendant concedes that the Wayfarer trademark is valid and incontestable, that Luxottica has the exclusive right to use the trademark in commerce, and that defendant used it without authorization to sell its goods. Defendant does not respond to Luxottica's assessment of the likelihood of confusion, but because defendant does dispute liability, this element will be briefly addressed. Courts employ a seven-factor test to determine likelihood of confusion: "(1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any evidence of actual confusion; and (7) the intent of the defendant to 'palm off' his product as that of another." *Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015), *cert. denied*, 136 S.Ct. 801 (2016). No single factor is dispositive, but factors (1), (6), and (7) are especially important. *Id*. Whether likelihood of confusion exists is generally a question of fact, but may be resolved on summary judgment "if the evidence is so one-sided that there can be no doubt about how the question should be answered." *CAE*, 267 F.3d at 677 (quoting *Door Sys., Inc. v. Pro–Line Door Sys., Inc.*, 83 F.3d

169, 173 (7th Cir.1996)). Luxottica provides sufficient evidence to clear that bar, leaving no doubt that a likelihood of confusion exists among consumers.

For example, Luxottica submits evidence showing that defendant used an identical mark in connection with the same type of product (sunglasses). Given that defendant placed the mark in the title of the product listing, where a consumer might expect to find a brand name, consumers would be likely to attribute both defendant's products and genuine Luxottica products to the same source. Luxottica also provides evidence that both it and defendant sell their products online and to the same general audience (those who search for sunglasses online), who do not have the ability to inspect the physical products before purchase. This supports a finding that there is a likelihood of confusion, because "[t]he more widely accessible and inexpensive the products and services, the more likely that consumers will exercise a lesser degree of care and discrimination in their purchases." *Sorensen*, 792 F.3d at 730 (quoting *CAE*, 267 F.3d at 683)). And Luxottica submits evidence, including articles and advertisements from various news and fashion publications, that the Wayfarer brand is well-known and well-regarded, which is relevant to the fifth factor of the test. *See Sorensen*, 792 F.3d at 731 ("A mark's strength ordinarily corresponds to its economic and marketing strength."). Given the undisputed facts of this case, no reasonable jury looking at the factors weighed together would find in defendant's favor on this issue.

While defendant does not dispute likelihood of confusion, it does argue that its use of the Wayfarer mark constitutes descriptive fair use under 15 U.S.C.

§ 1115(b)(4), which provides that a defendant in a trademark infringement action may invoke the affirmative defense of fair use by showing that the alleged infringement "is a use, otherwise than as a mark . . . which is descriptive of and used fairly and in good faith only to describe the goods or services of such party." The defense "is based on the principle that no one should be able to appropriate descriptive language through trademark registration." *Sorensen*, 792 F.3d at 722 (quoting *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 639 (7th Cir. 2001)). "To prevail on a fair use defense, a defendant must show that: (1) it did not use the mark as a trademark; (2) the use is descriptive of its goods or services; and (3) it used the mark fairly and in good faith." *Id.*

Defendant argues that it satisfies all three elements because the word "wayfarer" is used so frequently by "internet retailers that it is common parlance to describe the shape of sunglasses." 1:16-cv-487, [86] at 8. Defendant points out that the term appears in product listings posted by numerous other sellers in eBay's online marketplace, as well as two third-party sellers on Wal-Mart's website. It also submits as supporting evidence excerpted screenshots of eBay's website to show that eBay allows consumers to filter listings for sunglasses by style, and includes "Wayfarer" in a prepopulated list of styles. According to defendant, it used the term in the product description to reflect the style category it thought appropriate. Luxottica disputes the authenticity of the screenshots, because they do not contain any eBay logos or internet addresses that show they are from eBay's website. And Luxottica submits evidence of its own, showing that eBay does not include

8

"Wayfarer" among its style categories for sunglasses. Also, defendant is careful not to say that it actually chose the style category "Wayfarer" when listing the products, and Luxottica provides screenshots indicating that two of the products appear in the style category "Square," and one product does not have a style category at all. *See* 1:16-cv-487, [72-2] at 6; 1:16-cv-487, [72-3] at 6; 1:16-cv-487, [72-4] at 6. Luxottica thinks defendant is using misleading screenshots, while defendant suggests that the discrepancy is due to differences in eBay's procedures by country, since it accessed eBay from Hong Kong and plaintiffs' screenshots were generated in the United States. But even if eBay did include "Wayfarer" in its list of sunglasses styles presented to Hong Kong residents, defendant does not provide sufficient evidence in support of its argument to preclude summary judgment.

Defendant's descriptive fair use argument fails primarily because it cannot establish that the word "wayfarer" constitutes a descriptive term applicable to the shape of sunglasses. "A descriptive term ordinarily names a characteristic of a product or service." *Sorensen*, 792 F.3d at 724. And the test of descriptiveness is "one of consumer perception—how is [the term] perceived by the average prospective consumer?" *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 953 (7th Cir. 1992) (quotation and emphasis omitted). Defendant relies on *Sunmark, Inc. v. Ocean Spray Cranberries, Inc.*, 64 F.3d 1055 (7th Cir. 1995), which held that the use of "sweet-tart" as a description of a product's flavor was protected by the fair use doctrine, but only after noting that the words "sweet" and "tart" were words of description in ordinary English and that "sweet-tart" was in common usage

9

at the time. Defendant's only evidence of "wayfarer" being descriptive of its products is eBay's usage of the term and the fact that other online retailers advertise their sunglasses using the same term. Defendant provides no evidence of consumer perception, dictionary definitions, or usage by manufacturers or in the media. Defendant's evidence of other online retailers using the term does not absolve defendant of its infringing activity as much as identify other potential infringers. The word "wayfarer" does not describe any of the components or characteristics of sunglasses, and based on the record, no reasonable juror would conclude otherwise.

Defendant's argument that the word "wayfarer" is a commonplace term to describe the shape of sunglasses seems more like an argument that Luxottica's mark has become generic, and therefore not entitled to trademark protection, than a descriptive fair use argument. *See Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 727 (7th Cir. 1998). But defendant does not explicitly raise that argument, and it does not dispute the validity or incontestable status of Luxottica's mark or argue that the mark is unenforceable or subject to cancellation, which it would if it could prove genericness. *See TE–TA–MA Truth Found.–Family of URI, Inc. v. World Church of Creator*, 297 F.3d 662, 665 (7th Cir. 2002). Thus, defendant's fair use defense fails, and Luxottica's motion for summary judgment is granted.

2. *The Alhambra Trademarks*

With respect to the Alhambra marks, defendant concedes liability and raises no affirmative defenses. Instead, defendant limits its arguments to a request for

minimal damages to be awarded under 15 U.S.C. § 1117(c). Because the parties' only dispute relates to the amount of damages that should be awarded to plaintiff, summary judgment is granted with respect to plaintiff Van Cleef's claims.

B. **Statutory Damages**

In both actions, plaintiffs argue that defendant engaged in willful infringement, and they seek an award of statutory damages in the amount of at least $90,000 each. Under § 1117(c)(1), a plaintiff in a case involving the use of a counterfeit mark may elect to recover an award of statutory damages in an amount between $1,000 and $200,000 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court orders just." 15 U.S.C. § 1117(c)(1). And "if the court finds that the use of the counterfeit mark was willful," the ceiling for statutory damages is raised to $2,000,000 per mark per type of goods or services. *Id*. § 1117(c)(2). Beyond providing a range of possible statutory damages awards, the statute provides no guidance on determining the award amount. But the analogous provision for statutory damages in copyright infringement cases, 17 U.S.C. § 504(c), is instructive. *See Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991). In *Chi-Boy*, the Seventh Circuit said that courts enjoy wide discretion in awarding statutory damages and may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent to future copyright infringement." *Id*. (quoting *F.E.L. Publications v. Catholic Bishop of Chi.*, 754 F.2d 216, 219 (7th Cir. 1985)). In cases of willful infringement, courts may design the

11

statutory damages award "to penalize the infringer and to deter future violations." *Id*. at 1230.

Defendant argues that plaintiffs should be awarded minimal damages, primarily because the infringement was not willful. A defendant engages in willful infringement if he knew that his conduct constituted infringement or if he acted in reckless disregard of the owner's rights. *See Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511–12 (7th Cir. 1994); *see also Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 590 (7th Cir. 1989) ("Willful blindness is knowledge enough."). Knowledge may be inferred from the infringer's conduct. *Wildlife*, 18 F.3d at 511. Defendant argues that it did not know that it had listed infringing products, and that, rather than recklessly disregarding the rights of others, it engages in proactive efforts to avoid infringement as a matter of company policy. In the Luxottica action, defendant paints itself as an innocent infringer with over 20,000 products in its inventory, who let one product (in each store) slip through the cracks of its quality control system. Defendant makes the same argument in the Van Cleef action, also admitting to just one offending sale. Defendant's claim that the infringement was accidental is undermined by the fact that two separate cases involving different trademarks have been brought against it, and defendant admits to its unauthorized use of those marks in both—defendant cannot credibly argue that each case is an isolated event.

In both actions, plaintiffs argue that the infringed-upon marks are widely recognized and associated exclusively with their owners, citing several newspaper

and magazine articles that showcase plaintiffs' brands and products. They also argue that defendant's investigative efforts are insufficient, in part because the evidence of those efforts consists only of vague and unsubstantiated statements made by the director of STRADE Fareast Limited, the company that operates the eBay stores. While the director, John Z. Sun, attests to the existence of employee training sessions in intellectual property rights and of a company policy requiring employees to avoid trademark infringement by checking product listings against trademark databases, he provides no specific details of those practices. Defendant does not submit any documentary evidence or detailed explanation of its training or product-review practices, or an explanation of the efficacy or reasonableness of those practices. It does not identify its suppliers or discuss any efforts to investigate the sources of its goods. But even drawing all reasonable inferences in defendant's favor, the notion that defendant's conduct conveys its deference to trademark owners' rights is undercut by the fact that plaintiffs' trademarks are listed in the USPTO trademark database. Luxottica argues that searching for "wayfarer" would have revealed its trademark registration. And Van Cleef submits evidence showing that searching the database for jewelry with a four-leaf-clover design, as the earrings were described in the product listing, returns a list of 51 trademarks, the 17th being one of the Alhambra marks. 1:16-cv-487, [64] ¶ 2.

Defendant is familiar with intellectual property rights and aware of the potential for infringement in its online stores. Given the nature of its industry, it must do more than rely on the barebones procedures it currently has in place, which

may be effective in filtering out products bearing prominent logos but not much else. While the evidence of willfulness is not overwhelming, the undisputed evidence of the obviousness of the marks, the marks' registration in a database that defendant purports to search, and the affirmative, unauthorized use of the marks in advertising the goods demonstrates that defendant "suspect[ed] wrongdoing and deliberately fail[ed] to investigate," evidencing willful blindness. *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1992). This finding justifies a higher damages award, in order to penalize defendant and deter future violations.

Plaintiffs points out other factors that warrant high damages figures, as well. They emphasize the high value of their trademarks and their brands' recognition around the world. They also argue that they have expended considerable effort and expense to cultivate, maintain, and strengthen the value of the marks—they registered them with the USPTO, engaged in advertising and marketing efforts, and litigated against other trademark infringers. Defendant suggests that plaintiffs could have done more to protect its marks, referring specifically to eBay's Verified Rights Owner program, a section of eBay's website where trademark owners can provide information on their intellectual property rights to buyers and sellers. Defendant says Luxottica does not list "Wayfarer" among its brands on its Verified Rights Owner page, but Luxottica notes that the page explicitly states that its list of brands is non-exhaustive. And according to defendant, though Van Cleef is a participant in the program, the link to Van Cleef's section of the website leads to

14

another section of eBay's website, written in German, that has nothing to do with Van Cleef. Van Cleef disputes the authenticity of defendant's evidence, which is an excerpt of a screenshot of the German page and does not include a URL or access date, and submits its own evidence that the website works. But none of this is relevant, because defendant concedes that plaintiffs own the federally-registered trademarks upon which defendant infringed, and defendant does not deny that the brands are valuable or that plaintiffs have made other efforts to protect and enhance those brands.

Defendant's remaining arguments in favor of minimal damages are unpersuasive. It claims that it only sells products through eBay, and that eBay maintains sales records and makes the calculation of actual damages easy. Defendant says it sold only one pair of earrings to Van Cleef's investigator for $6.05 CAD, and that Van Cleef's requested damages award would amount to a windfall. It makes a similar argument in the Luxottica action, claiming to have sold just one pair of sunglasses from each storefront. But plaintiffs note that defendant does not submit any sales records to support its assessment of damages, and that defendant's representation of selling products only through eBay is false— defendant's PayPal account is also associated with the internet domain www.suntekstore.com, through which it sells jewelry and sunglasses. Also, Luxottica shows that the sales figures displayed on defendant's eBay pages say that 49 pairs of the infringing sunglasses were sold. Because plaintiffs elected to recover statutory damages rather than actual damages, they need not prove their actual

15

losses. But even putting aside any evidence of defendant selling multiple products through multiple online sales platforms, defendant can reach a worldwide customer base on eBay alone. Given that the proliferation of lower-quality counterfeit products can harm a trademark owner's brand and goodwill, that global exposure makes plaintiffs' actual losses difficult to calculate and reinforces the need to award damages sufficient to deter similar conduct by defendant and others. Plaintiffs' requested relief of $90,000 is well below the maximum damages amount allowed by 15 U.S.C. § 1117(c) for both willful and non-willful infringement, and is lower than amounts awarded in other cases involving the online sale of counterfeit goods. *See, e.g., Bulgari, S.P.A. v. Zou Xiaohong*, No. 1:15-CV-05148, 2015 WL 6083202, at *4 (N.D. Ill., Oct. 15, 2015) (awarding $100,000 for one mark); *Luxottica USA LLC v. The Partnerships, et al.*, No. 1:14-CV-9061, 2015 WL 3818622, at *5 (N.D. Ill. June 18, 2015) (awarding $150,000 for three marks); *Brown v. Walker*, No. 1:06-CV-218, 2010 WL 2346242, at *7 (N.D. Ind. May 25, 2010), *report and recommendation adopted as modified*, No. 1:06-CV-218-TLS, 2010 WL 2346225 (N.D. Ind. June 9, 2010) (awarding $150,000 for three marks); *Burberry Ltd. & Burberry USA v. Designers Imports, Inc.*, No. 07 Civ. 3997 (PAC), 2010 WL 199906, at *11 (S.D.N.Y. Jan. 19, 2010) (awarding $100,000 per mark per type of good for a total of $1,500,000); *Deckers Outdoor Corp. v. Does 1–55*, No. 1:11-CV-00010, 2011 WL 4929036, at *5 (N.D. Ill. Oct. 14, 2011) (awarding $750,000 per mark).

Considering the purposeful infringement, the value of plaintiffs' brands, plaintiffs' efforts in promoting and protecting their brands, and defendant's ability

to reach a vast customer base over the internet, a high award is necessary to compensate plaintiffs, penalize defendant, and deter future infringement. But there is no evidence to suggest that defendant is a large-scale counterfeiter or that plaintiffs suffered substantial harm. Defendant also presented some evidence of its efforts to minimize its infringing activities, inadequate as they may be. These factors mitigate defendant's infringement to some degree, and I conclude that, in each case, $60,000 is a sufficient award of statutory damages.

### C. Permanent Injunction

In addition to a statutory damages award, Luxottica and Van Cleef request that defendant be permanently enjoined from advertising, offering for sale, and selling products that bear counterfeit Wayfarer and Alhambra trademarks, respectively, or otherwise violating plaintiffs' rights in those marks. Defendant does not address those requests, and plaintiffs meet the standard for obtaining permanent injunctions. Plaintiffs have established irreparable harm—the confusion caused by counterfeit products in the stream of commerce damages the value of the brands and cannot be compensated by money alone. *See Re/Max North Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001). The balance of hardships favors plaintiffs, because defendant would suffer no harm from being enjoined from violating the law. And eliminating potential consumer confusion is in the public's interest. In both actions, the requests for injunctive relief are therefore granted.

### D. Attorney's Fees and Costs

Finally, plaintiffs seek recovery of their attorney's fees and costs. As the prevailing parties, plaintiffs are entitled to costs. Fed. R. Civ. P. 54(d)(1). Attorney's fees are recoverable under 15 U.S.C. § 1117(a) "in exceptional cases," including when defendant's conduct is willful. *BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1099 (7th Cir. 1994). In assessing damages under § 1117(a), courts "shall" award reasonable attorney's fees in cases involving the intentional use of a counterfeit mark, unless they find extenuating circumstances. 15 U.S.C. § 1117(b). "Willful blindness is sufficient to trigger the mandatory provisions of [§ 1117(b)]." *Hard Rock Cafe*, 955 F.2d at 1151. Attorney's fees are available when plaintiffs opt to receive statutory damages under 15 U.S.C. § 1117(c), as well. *See Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012). Defendant does not identify any extenuating circumstances that would preclude the awarding of attorney's fees, and its reliance on *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 626 F.3d 958 (7th Cir. 2010), which does not involve the use of a counterfeit mark or § 1117(b), does not help it. Accordingly, reasonable attorney's fees and costs shall be awarded to plaintiffs.

## IV. Conclusion

Luxottica's motion for summary judgment, 1:16-cv-487, [69], is granted. Van Cleef's motion for summary judgment, 1:16-cv-1227, [49], is also granted. In each action, a permanent injunction shall issue, and statutory damages in the amount of $60,000, reasonable attorney's fees, and costs shall be awarded. Plaintiffs shall

submit proposed judgment orders that are consistent with this decision, and shall comply with Local Rules 54.1 and 54.3 on their petitions for costs and fees.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: 2/15/2017